# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN A. GILBERT, | | |
| Plaintiff, | | No. C18-2045-LTS |
| vs. | | |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | | **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |
| Defendant. | | |

## I.    INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge. *See* Doc. No. 14. Judge Mahoney recommends that I affirm the decision by the Commissioner of Social Security (the Commissioner) denying Susan A. Gilbert's application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, et seq. Gilbert has filed timely objections. *See* Doc. No. 15. The background is set forth in the R&R and is repeated herein only to the extent necessary.

## II.    APPLICABLE STANDARDS

### A.    *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

to any fact, if supported by substantial evidence, shall be conclusive . . .").  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).  The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it.  *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence.  *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).  The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).  Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)).  This is true even in cases where the court "might have weighed the evidence

differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

**B.      *Review of Report and Recommendation***

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III.    THE R&R

Gilbert applied for DIB in November 2014, alleging disability beginning March 8, 2014, due to bi-polar disorder, depression, anxiety, ADHD and traumatic brain injury. Doc. No. 14 at 3 (citing AR 87-88); AR 226. After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found that Gilbert was not disabled as defined in the Act. Gilbert argues the ALJ erred by: (1) failing to give a good reason for discounting her treating psychiatrist's RFC opinion; (2) failing to acknowledge her therapist's opinion; and (3) failing to include a limitation in the RFC opinion of work that requires only one- to two-step tasks. Doc. No. 14 at 6. She also challenges the validity of the ALJ's decision because she contends the ALJ was not properly appointed under *Lucia v. SEC*, 138 S. Ct. 2044 (2018). *Id.* Judge Mahoney addressed each argument separately.

First, Judge Mahoney noted that Gilbert's treating psychiatrist, Dr. Ann Rathe, opined that Gilbert suffered moderate limitations, defined as "preclud[ing] performance up to 20% of an 8 hour work day or 40 hour work week," in her ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule; and sustain ordinary routine without special supervision. *Id.* at 7 (citing AR 910-11). Dr. Rathe found Gilbert suffered marked limitations (precluding performance more than 20% of the time) in being punctual within customary tolerances; responding appropriately to changes in the work

setting; and setting realistic goals or making plans independently of others. *Id.* (citing AR 910-12). She found extreme limitations (unable to 'function in a regular, reliable, and sustained schedule) in maintaining attention and concentration for extended periods of time and in maintaining regular attendance, opining that she would miss work more than three times a month. *Id.* (citing AR 910-11). She also found extreme limitations in Gilbert's ability to work in coordination with or proximity to others without being distracted by them. *Id.* (citing AR 911).

Dr. Rathe found Gilbert had marked limitations in her ability to complete a normal work day and extreme limitations in her ability to complete a normal work week. *Id.* at 8. She assessed mild limitations in several categories of social interaction, but moderate to extreme limitations (depending on the severity of her depression) in her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. *Id.* (citing AR 911-12). Overall, Dr. Rathe found Gilbert suffered marked limitations in her activities of daily living and in maintaining social functioning and would frequently to constantly have deficiencies in concentration, persistence, or pace resulting in the failure to complete tasks in a timely manner. *Id.* (citing AR 912).

Judge Mahoney noted the ALJ gave Dr. Rathe's opinion little weight, finding it inconsistent with Dr. Rathe's treatment records, the record as a whole, and Gilbert's activities of daily living, among other reasons. *Id.* (citing AR 20). Judge Mahoney then provided a very thorough discussion of Gilbert's treatment history with Dr. Rathe, *see* Doc. No. 14 at 8-21, noting that she began treatment in November 2014 to help with her short-term memory loss (suffered as a result of a car accident in 2002) and with managing stress and emotions. *Id.* (citing AR 268). Gilbert's treatment with Dr. Rathe consisted of objective examinations with mostly normal results, but great variety in Gilbert's reports of symptoms and the effectiveness of her medications. At best, Gilbert reported her medications were helping and she was doing well on them. *Id.* at 9-21 (citing AR 269, 271, 535, 537, 543-44, 656-69, 671-73, 680, 690, 698, 716-18, 724-32, 737, 739, 740-42, 751-53, 843, 871, 873-74, 904). At worst, Gilbert was admitted to the hospital

in December 2014 with racing thoughts and complaints of not being able to tell what was reality and reported suicidal thoughts in October and December 2015 and February 2016. *Id.* (citing AR 404-10, 720-22, 733-35, 876, 878, 880, 892, 898). She also reported to the emergency room twice in March 2016 with reports of mania. *Id.* at 16 (citing AR 701, 876).

Gilbert would also report increased symptoms when she admittedly forgot doses of her medication. *Id.* at 9-21 (citing AR 535, 701, 705, 707, 714-16, 886, 888-90). Dr. Rathe adjusted Gilbert's medications in response to her complaints of increased symptoms or undesirable side effects. *Id.* at 9-21 (citing AR 530, 536, 540, 543-44, 545, 547-48, 671-73, 685, 692, 703, 716, 746, 748, 751, 753). Overall, the treatment notes reflect that Gilbert experienced several ups and downs in her mental health treatment from November 2014 through March 2017. At times, Dr. Rathe attributed Gilbert's symptoms to stressors in her life such as fostering two special-needs children (AR 540, 755), being a full-time student (AR 545-46), receiving abnormal lab results indicating diabetes (*Id.*), losing her part-time job and not being able to afford her daughter's daycare costs (AR 547-48).

Judge Mahoney concluded that substantial evidence supported the ALJ's conclusion that "[m]edications have been effective in reducing or controlling [Gilbert's] symptoms when used appropriately" and that the overall record and Gilbert's activities of daily living are inconsistent with the extreme limitations opined by Dr. Rathe. *Id.* at 19-20 (citing AR 20). She also reasoned that while the record reflects some limitations in maintaining attention and concentration, it does not reflect a total inability to concentrate for extended periods of time, as found by Dr. Rathe. *Id.* at 20. Rather, Judge Mahoney found that substantial evidence supported the ALJ's determination that Gilbert could concentrate for "simple, routine tasks" as she was able to maintain sufficient concentration to study, participate in class, take examinations and successfully graduate from community college. *Id.* She was also able to work 15 hours a week at an elementary school cafeteria, perform simple chores, make simple recipes, follow the plot

of television shows, make scrapbooks and watch her niece's softball games. *Id.* (citing AR 269, 332, 435, 535, 543, 547, 627, 656, 674, 677, 680, 687, 690, 694, 709, 713, 727, 733, 737, 739-40, 744, 749). Judge Mahoney also agreed with the ALJ's impression that Dr. Rathe's "[t]reatment notes do not indicate missed appointments at a rate proportionate to 3 times per month." *Id.* (citing AR 20). While she agreed with Gilbert that the rate Gilbert missed psychiatric appointments did not necessarily correlate to the rate Gilbert would miss work, she did not agree that the amount of times Gilbert missed her field experience hours in spring 2016 supported Dr. Rathe's finding that Gilbert would miss work more than three times a month. *Id.* Judge Mahoney reasoned that when reviewing the treatment notes as a whole, Gilbert's mental health appeared to have been the worst during the spring of 2016 and appeared to be the result of medication changes, not taking her medication as prescribed, as well as the stress of her final semester of community college. *Id.* The ALJ limited Gilbert to low-stress work, which Judge Mahoney noted is arguably less stressful than college. For these reasons, she concluded substantial evidence supports the ALJ's conclusion that Dr. Rathe's finding that Gilbert would miss work more than three times a month was inconsistent with the record as a whole. *Id.* Overall, she concluded the ALJ provided good reasons, supported by substantial evidence for discounting Dr. Rathe's opinion and recommends that I find the ALJ did not err as to this aspect of his opinion. *Id.* at 21.

Next, Judge Mahoney addressed Gilbert's argument that the ALJ failed to acknowledge the opinion of Gilbert's therapist, Dr. Adarienne Burrow. *Id.* She noted that Gilbert attended therapy from April 2014 to May 2016 through the student health center while she attended college. Burrow's treatment notes are not in the record and the ALJ did not address the letter Burrow submitted evaluating Gilbert's limitations. *Id.* (citing AR 440-42).

Judge Mahoney noted that Burrow, a licensed mental health counselor by the state of Iowa with a Master's degree in counseling or a related field, is not considered an "acceptable medical source" under the applicable regulations. *Id.* (citing 20 C.F.R. §

404.1502(a)).  These regulations, however, require the ALJ to consider opinions from nonacceptable medical sources "using the same factors" as evaluating a treating source or other medical opinion.  *Id.* (citing 20 C.F.R. § 404.1527(f)(1)).

Judge Mahoney found the ALJ should have addressed Burrow's opinion but noted that her opinion generally echoed Dr. Rathe's opinion.  *Id.* at 21-22 (citing AR 440-42, 908-13).  She reasoned that the ALJ's discussion of Dr. Rathe's opinion (and the reasons he discounted that opinion) suggests that the ALJ would have similarly found Burrow's opinion inconsistent with the overall record and would not have assigned it much weight. *Id.* at 22.  She stated: "Because the ALJ's discussion of the evidence in the opinion as a whole demonstrates the ALJ's reasoning for discounting Therapist Burrow's opinion, remand is not required for the ALJ to evaluate Therapist Burrow's opinion."  *Id.* (citing *Hopper v. Colvin*, No. 1:13CV0004 AGF/NAB, 2014 WL 1048556, at *11 (E.D. Mo. Mar. 17, 2014) (holding that although ALJ should have addressed nonacceptable source's second RFC opinion issued two years after the first, any error was harmless because addressing the opinion "would have no practical effect on the outcome of the case," since the source's second RFC opinion "was substantially similar to the [first] statement," which the ALJ discussed and assigned "no weight")).

Judge Mahoney further reasoned that this was not a situation in which Burrow's opinion was the only mental RFC opinion in the record from a provider who treated Gilbert's mental health.  *Id.* at 22-23 (distinguishing cases).  She noted the ALJ evaluated and addressed Gilbert's treating psychiatrist's RFC opinion, which was substantially similar to Burrow's opinion.  *Id.*  This distinguished Gilbert's case from *Fett v. Colvin*, No. C 14-3034-MWB, 2015 WL 5999385, at *20 (N.D. Iowa Oct. 15, 2015), in which the only medical opinions discussed by the ALJ were those of nonexamining state agency consultants and the unaddressed opinion from a nonacceptable source was from one of only a few providers who had treated the claimant's physical condition.  *Id.* at 23 (also citing *Anderson v. Comm'er of Soc. Sec.*, No. 18-CV0024-LRR (N.D. Iowa Jan. 25,

2019) (in which the ALJ did not address an opinion from a consultative examiner and there were no other opinions in the record from a treating or examining provider)).

Judge Mahoney further found that the ALJ's failure to obtain Burrow's treatment notes did not require remand. *Id.* She noted the record contained substantial psychological evidence from a treating or examining physician, citing Dr. Rathe's treatment notes and the results of neuropsychological testing. *Id.* (citing *Strongson v. Barnhart*, 361 F.3d 1066, 1071-72 (8th Cir. 2004)). She recommends denying Gilbert's request to remand on this basis. *Id.* at 24.

Next, Judge Mahoney addressed Gilbert's argument that by including a limitation in the RFC of "simple, routine tasks, with simple work[-]related decisions and few if any changes in work setting" (AR 15), the ALJ meant to limit her to jobs involving "simple one- or two-step instructions" – characterized as "reasoning level 1" jobs by the Dictionary of Occupational Titles (DOT). *Id.* Judge Mahoney noted that the reasoning levels in the DOT are described as follows:

- LEVEL 1 – Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
- LEVEL 2 – Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
- LEVEL 3 – Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

*Id.* (citing DOT, App. C). She concluded it did not appear the ALJ meant to limit Gilbert to work involving one or two steps, as opposed to simple work generally. *Id.* at 25. The VE testified that the work he identified (or work that the ALJ ultimately determined Gilbert could perform) involved "simple routine tasks, simple work-related decisions, and few if any changes in work setting," but required a reasoning level of two and would require the performance of at least three steps. *Id.* (citing AR 22, 76-78, 82-84). Judge Mahoney noted the Eighth Circuit has held that there is no inconsistency between a

claimant's ability "to handle simple job instructions; . . . to adapt to infrequent work changes; and . . . [to] perform[] basic mental demands of simple, routine, and repetitive work activity at the unskilled task level"' and the claimant's ability to perform jobs identified by the DOT as requiring a reasoning level of two." *Id.* (citing *Moore v. Astrue*, 623 F.3d 599 602, 604-05 (8th Cir. 2010)). The court in *Moore* stated "the ALJ did not limit 'simple' job instructions to 'simple one- or two-step instructions' or otherwise indicate that [claimant] could perform only occupations at a DOT Level 1 reasoning level." *Id.* (citing *Moore*, 623 F.3d at 604).

In addressing Gilbert's argument that the medical evidence supports a limitation of one- to two-step work, Judge Mahoney discussed the medical opinions in the record. First, she examined the opinions of the nonexamining state agency consultants, Drs. Brandon and Wright, who concluded Gilbert had the RFC to "perform simple, repetitive tasks consisting of 1 to 2 step commands." *Id.* at 26 (citing AR 97, 111-12). Judge Mahoney noted the ALJ assigned these opinions "partial weight," stating they were "fairly well supported and consistent with other evidence," but that the ALJ "also considered evidence not available to the state agency medical consultants." *Id.* (citing AR 19-20).

Dr. Rathe found Gilbert was even more limited in the areas of understanding, remembering and carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing work at a consistent pace without an unreasonable number and length of rest periods; and to respond appropriately to changes in the work setting. *Id.* (citing AR 911-13). The ALJ assigned her opinion little weight. The record also contains an opinion from a one-time consultative examiner, Dr. Roland, who concluded Gilbert's memory and retention and recall were intact such that she would have the ability to remember two and perhaps three step instructions given by supervisory personnel. *Id.* (citing AR 517-22). The ALJ gave Dr. Roland's opinion "partial weight," noting his "findings are consistent [with] some other evidence, but the

record as a whole supports a somewhat more restrictive [RFC]." *Id.* at 27 (citing AR 18). Judge Mahoney found the ALJ was referring to Dr. Roland's comment that Gilbert was "able to relate effectively to employers, supervisors, and residents/customers," in making this finding because the RFC limited Gilbert to work requiring only occasional contact with supervisors and coworkers and no contact with the public. *Id.* (citing AR 15, 522).

Finally, a one-time neuropsychological examination performed by Dr. Roberts in February 2015 revealed:

> Short-term Verbal Memory
> Story Memory
> Immediate Recall: 63rd percentile, average
> Delayed Recall: 5th percentile, mildly defective
> List-Learning
> Initial Learning: 75th percentile, high average
> Delayed Recall: 25th percentile, low average
> . . .
> Short-term Nonverbal Memory
> Benton Visual Retention Test; 96th percentile, superior Delayed
> Recall of RBANS figure: 61st percentile, average.

*Id.* (citing AR 430). Dr. Roberts found that Gilbert's "[p]oor recent memory for newly learned verbal material did not appear to be reasonably attributable to problems with basic attention and concentration" and that she was "likely to do better in employment and learning environments that are highly structured in nature and which have 'right answers.'" *Id.* (citing AR 431-32). The ALJ gave Dr. Roberts' conclusion "great weight" finding that it was "supported and consistent with the evidence as a whole and provide[d] the best description of the claimant's ability to function." *Id.* at 28 (citing AR 18).

Judge Mahoney concluded that Dr. Roland's and Dr. Roberts' opinions as well as the ALJ's independent review of the medical evidence supported the ALJ's decision not to limit Gilbert to work involving only one- or two-step tasks. *Id.* While Dr. Roland

commented that the results of his testing indicated the ability to remember two- and perhaps three-step instructions, he ultimately concluded that Gilbert's "[m]emory and intellect are sufficient for employment purposes." *Id.* (citing AR 520, 522). Similarly, while Dr. Roberts' testing demonstrated limitations in recalling "newly learned verbal information" (but not nonverbal information), he ultimately concluded Gilbert could succeed in highly structured environments with "right answers," without imposing a limitation of one- to two-step tasks. *Id.* (citing AR 430, 432). Judge Mahoney concluded these opinions, in combination with the treatment notes and Gilbert's activities of daily living (including a part-time position involving a reasoning level of two), constituted substantial evidence, including some medial evidence, supporting the ALJ's RFC determination that Gilbert was not limited to work involving only one to two steps. *Id.*

Finally, Judge Mahoney addressed Gilbert's Appointments Clause challenge alleging that Social Security ALJs are inferior officers subject to the Appointments Clause and that her case should be remanded for a new hearing before a constitutionally-appointed ALJ. *Id.* at 29-30. Judge Mahoney noted Gilbert never raised this issue during the administrative proceedings and that I have previously found that a failure to do so amounts to the claimant forfeiting such a challenge. *Id.* at 30-31. After discussing the background of such a challenge provided in *Lucia v. SEC*, 138 S. Ct. 2044 (2018) and the various district court decisions that have ruled on this issue, she recommends that I follow the majority of courts and reject Gilbert's challenge based on her failure to raise it in the administrative proceedings. *Id.* at 29-33. For all of these reasons, she recommends that I affirm the ALJ's decision.

## IV. DISCUSSION

Gilbert makes the following objections to the R&R:

- The ALJ did not provide good reasons for the weight afforded to Burrow's other medical source opinions.

- The ALJ's RFC should have expressly incorporated a "1- to 2-step tasks" limitation, and the lack of that clear limitation in Gilbert's RFC led to a step five denial of benefits not supported by substantial evidence.

- The ALJ failed to provide good reasons for disregarding the treating psychiatrist opinion of Dr. Rathe concerning Gilbert's mental limitations.

- The ALJ was an inferior officer not appointed in a constitutional manner, which requires the ALJ's decision to be vacated and Gilbert's claim remanded to be decided by a new ALJ who was properly appointed.

Doc. No. 15. I will consider Gilbert's objection related to Dr. Rathe's opinion first, followed by her objections to Burrow's opinion, the reasoning level limitation and her Appointments Clause challenge.


**A.      *Dr. Rathe's Opinion***

Gilbert relies on the arguments made in her principal brief (Doc. No. 10 at 8-12) regarding why the ALJ failed to properly weigh Dr. Rathe's opinion. Doc. No. 15 at 5. She contends the ALJ's failure to address Burrow's opinion impacted the ALJ's ability to properly evaluate Dr. Rathe's opinion and the ALJ did not provide good reasons supported by substantial evidence for discounting Dr. Rathe's opinion.

As Judge Mahoney noted, Dr. Rathe opined that Gilbert suffered moderate limitations including: her ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule; and sustain ordinary routine without special supervision. Doc. No. 14 at 7 (citing AR 910-11). Dr. Rathe found marked limitations in: being punctual within customary tolerances; responding appropriately to changes in the work setting; setting realistic goals or making plans independently of others; and her ability to complete a normal work day without interruptions from psychological based symptoms

13

and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 7-8 (citing AR 910-12). She found Gilbert extremely limited in: maintaining attention and concentration for extended periods of time; maintaining regular attendance; her ability to complete a normal work week without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and her ability to work in coordination with or proximity to others without being distracted by them. *Id.* She opined that Gilbert would miss work more than three times a month. *Id.* Dr. Rathe found mild limitations in several categories of social interaction. *Id.* at 8.

The ALJ gave little weight to Dr. Rathe's opinion for the following reasons:[2]

- Dr. Rathe's findings were internally inconsistent, specifically with regard to difficulties in maintaining social functioning as Dr. Rathe identified them as marked and mild.

- Opinions of disability and functional capability are reserved to the Commissioner.

- Her opinions were not supported by signs and findings consistent with the degree of limitation indicated.

- Her findings were inconsistent with her own treatment notes.

- Treatment notes do not indicate missed appointments at a rate proportionate to three times per month.

- The opinions rely on complete acceptance of the claimant's allegations concerning the existence, persistence and intensity of symptoms and functional limitations which the record as a whole inconsistencies establish are not entitled to full persuasiveness and are an underrepresentation of function.

---

[2] Specifically, the ALJ stated he was "unable to attribute much weight to the opinions." AR 20.

- The opinions are inconsistent with other evidence and inconsistencies in the record as a whole which the treating doctor did not have available as indicated throughout this decision.

- The opinions are not consistent with the claimant's wide range of daily activities or neurocognitive testing.

AR 20. Judge Mahoney provided a thorough summary of Gilbert's treatment with Dr. Rathe beginning in November 2014 and continuing through May 2017, which I find consistent with the treatment notes in the record and unnecessary to repeat here. Doc. No. 14 at 8-19. In her principal brief, Gilbert argues these are not good reasons to discount Dr. Rathe's opinion, but specifically addresses only one of those reasons – the number of days Gilbert could be expected to miss work. Doc. No. 10 at 11-12. She argues that Dr. Rathe's opinion that Gilbert could be expected to miss work three times per month is consistent with her treatment note indicating Gilbert missed more than half of her required field experience hours for her community college degree. *Id.* She also argues that she almost did not graduate due to missed appointments. *Id.* (citing AR 20, 866). Finally, she contends this reason was not based on a fully developed record because the ALJ did not obtain Burrow's treatment notes from Gilbert's weekly counseling appointments. She contends that these records would show she missed multiple therapy appointments as she struggled with anxiety, depressed mood and suicidal ideation. *Id.* (citing AR 701). Given that the VE testified that missing more than three days of work would preclude competitive employment, Gilbert argues this alleged error was not harmless.

Judge Mahoney addressed this argument in the R&R:

Although I agree with Gilbert that the rate a claimant misses psychiatric appointments does not necessarily correlate to the rate a claimant will miss work, I disagree that the amount of times Gilbert missed her field experience hours in the spring of 2016 supports Dr. Rathe's finding that Gilbert would miss work more than three times a month. Reviewing the treatment records as a whole, Gilbert's mental health appears to have been at its worst during the spring of 2016, which seemed to be the result of

15

> medication changes and not taking her medication as prescribed, as well as the stress of her final semester of community college. The ALJ limited Gilbert to low-stress work, which is arguably much less stressful than college. Substantial evidence supports the ALJ's conclusion that Dr. Rathe's finding that Gilbert would miss work more than three times a month is inconsistent with the record as a whole.

Doc. No. 14 at 20. Judge Mahoney concluded the ALJ gave good reasons, supported by substantial evidence, for discounting Dr. Rathe's RFC opinion, noting that because the ALJ gave multiple reasons for discounting the opinion, some of which were sufficient standing alone, it was irrelevant whether other reasons given by the ALJ were "good" or supported by substantial evidence. *Id.* at 21 (citing *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010)).

"Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so." *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016). These reasons may include internal inconsistency or that the evidence as a whole provides greater support for a different provider's opinion. *Id.* An ALJ may discount a treating physician's opinion "(1) where other medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007) (quoting *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000)). When an ALJ does not give a treating physician opinion controlling weight, he or she must consider the following factors in deciding the weight to give the opinion:

(i)      Length of the treatment relationship and the frequency of examination.

(ii)     Nature and extent of the treatment relationship.

(iii)    Supportability.

(iv)    Consistency [with the record as a whole].

(v)     Specialization.

(vi)    Other factors [which tend to support or contradict the opinion].

20 C.F.R. § 404.1527(c).[3]  As such, I will evaluate whether these factors support the ALJ's decision to give less than controlling weight to Dr. Rathe's opinion.

As to the length of the treatment relationship and frequency of examination, the regulation provides:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 404.1527(c)(2)(i).  Dr. Rathe began seeing Gilbert in November 2014.  Dr. Rathe noted in her opinion that she sees Gilbert "weekly when she's doing poorly and approximately every two months when her symptoms are under control."  AR 908.  This is supported by the treatment notes.  AR 524-89; 644-757.  It appears that Dr. Rathe's treatment may have ended in June 2017 when Gilbert called in to request that her records be transferred to a different provider.  AR 842.  It is unclear whether two and a half years is long enough for Dr. Rathe to have obtained a "longitudinal picture" of Gilbert's impairment.  Given that this time frame included particularly stressful events (events that were noted to exacerbate Gilbert's symptoms) such as completing her degree while caring for her daughter and two foster children with special needs, working a part-time job and receiving a difficult prognosis regarding her mother's health among other things, it is difficult to evaluate whether Dr. Rathe's treatment of Gilbert during this time gave her the full picture.  Nevertheless, given the frequency that Dr. Rathe saw Gilbert during this time, I find this factor weighs slightly against the ALJ's decision to give Dr. Rathe's opinion less than controlling weight.

---

[3] This regulation applies only for claims filed before March 27, 2017.  For claims filed after March 27, 2017, the rules in § 404.1520c apply.  Gilbert's application was filed in November 2014.

Regarding the nature and extent of the relationship, the regulation provides:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examination and testing the source has performed or ordered from specialists and independent laboratories . . . When the treating source has reasonable knowledge of your impairment(s), we will give the source's medical opinion more weight than we would give it if it were from a nontreating source.

*Id.* § 404.1527(c)(2)(ii). Dr. Rathe is a psychiatrist who began treating Gilbert in November 2014. AR 524. Dr. Rathe appears to have been Gilbert's primary provider for mental health treatment during this time. While Gilbert also saw a counselor while attending school, Dr. Rathe's treatment notes suggest these sessions were frequently interrupted by school breaks or other reasons. AR 701, 714, 716, 720, 733, 752, 756. Dr. Rathe managed Gilbert's medications, made adjustments as necessary and performed mental status examinations at each appointment. However, as noted above, it is difficult to determine whether Dr. Rathe obtained a good sense of Gilbert's baseline given the situational stressors Gilbert was confronting at the time and the fact that Dr. Rathe did not have access to Gilbert's previous medical records. However, given that Dr. Rathe treated Gilbert's mental health for two and a half years on a regular basis and regularly performed mental status examinations at her appointments, I find this factor weighs against the ALJ's decision to give Dr. Rathe's opinion less than controlling weight.

With regard to supportability, the regulation provides: "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). Dr. Rathe's opinion is primarily a check-box

opinion,[4] however, she did provide some narrative answers. For instance, in identifying symptoms, she noted that the symptoms she marked "in part" occur when Gilbert becomes depressed or manic, noting that they are "episodic." AR 908 (identifying such symptoms as delusion or hallucinations, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, paranoia or inappropriate suspiciousness, suicidal ideation or attempts, decreased energy and manic syndrome). She also explained that she wrote "chronic" next to symptoms that were chronic and persistent. *Id.* (identifying such symptoms as difficulty thinking or concentrating and generalized persistent anxiety).

With regard to "clinical findings, including results of mental status examination which demonstrate the severity of your patient's mental impairment and symptoms," Dr. Rathe wrote: "Recently she decided to come off some of her medications because she wants to get pregnant. I have advised against this because it puts her at risk of decompensation. On exam 5-1-17 she lacked insight into how severe her illness has been in the past, was very restless, had flat affect, made good eye contact, denied [suicidal ideation], [homicidal ideation], psychosis, or depressed mood." AR 909. This narrative suggests, and the treatment notes support, that Gilbert's mental health (as indicated in medical examinations and Dr. Rathe's assessments) suffers when she is not taking her medication as prescribed or when she is experiencing situational stressors.

The treatment note from May 1, 2017, indicates that Gilbert had quit working at the school cafeteria on April 21 to re-open a daycare in her home, something she had been wanting to do for a long time. AR 656. She was restless due to having a Mountain Dew. *Id.* She denied feeling depressed or anxious, denied concerns that opening a

---

[4] Opinions provided in a checklist format such as Dr. Rathe's are typically given little weight. *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) ("[Dr. Hollis's] assessments, however, consist of nothing more than vague, conclusory statements – checked boxes, circled answers, and brief fill-in-the-blank responses. They cite no medical evidence and provide little to no elaboration, and so they possess little evidentiary value. On that basis alone, the ALJ did not err in giving Dr. Hollis's RFC assessments little weight and relying more heavily on other opinions in the record.") (internal quotations and citations omitted).

daycare would cause her excess stress and did not think her decision was impulsive. *Id.* Dr. Rathe assessed that Gilbert was "psychiatrically stable" but stated she was "concerned about the risks of decompensation with pregnancy and parenting a second child, whether or not she stays off medications." AR 658. She also stated she was "concerned about whether she will be able to handle the stress of running her own daycare." *Id.* She encouraged Gilbert to stay on her medications while she gathered the opinions of her other doctors regarding pregnancy and its risks. *Id.* A record from June 7, 2017, indicates Gilbert requested her records be released to another provider because she disagreed with Dr. Rathe that she needs medication and because Dr. Rathe advised caution about getting pregnant. AR 842.

The treatment note from May 1, 2017, is insufficient to support the marked and extreme limitations identified in Dr. Rathe's opinion. *See* AR 911-12. It shows a normal mental status examination even though Dr. Rathe expressed concerns about how the events in Gilbert's life would affect her mental health in the future. Dr. Rathe did not cite any other treatment notes in support of her opinion, and, as mentioned, Dr. Rathe's concerns are consistent with the majority of her treatment notes showing that Gilbert's mental health was stable when she was on her medication and not confronting situational stressors. The extreme limitations identified in Dr. Rathe's opinion appear to be consistent only with those times when Gilbert was not taking her medication as prescribed or was dealing with a particularly stressful situation. As such, I find this factor weighs in favor of the ALJ's decision to give Dr. Rathe's opinion less than controlling weight.

With regard to consistency, the regulations provide that "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c). This is one of the reasons the ALJ concluded Dr. Rathe's opinion was not entitled to much weight. The ALJ reasoned Dr. Rathe's opinion was inconsistent with her own treatment notes. This reason is supported by substantial evidence. *See* Doc. No. 14 at 8-19 (summarizing Dr. Rathe's treatment notes).

Dr. Rathe's mental status examinations frequently resulted in mostly normal findings, except with regard to affect and occasionally mood.  Many times, however, she attributed these abnormal results to situational stressors in Gilbert's life or the need to adjust Gilbert's medication.   Given that Dr. Rathe was a new provider for Gilbert's medications, *see* AR 524 (noting she did not have access to Gilbert's previous mental health records), it is not surprising that it would take time for her and Gilbert to find the correct dosage and combination of medication.  *See, e.g.*, AR 531 (treatment note dated January 3, 2015, noting somewhat constructed affect and "flat . . . sad" mood, but noting concern that medication was driving mood lability since a higher dose triggered hypomania); AR 538 (treatment note dated February 26, 2015, noting normal examination results and a significant improvement in mood since starting new medication); AR 541 (treatment note dated March 24, 2015, noting examination results of poor hygiene, anxious and tearful affect and overwhelmed mood and noting concern that claimant's decision to foster two special needs children was taking a toll on her mental health); AR 544 (treatment note dated April 6, 2015, with improved  but not normal examination results and attributing "flat and unmotivated" findings to oversedation from a new medication); AR 546 (treatment note dated April 27, 2015, with similar examination results from last appointment and noting that claimant "remains under a great deal of stress and feels totally overwhelmed by multiple responsibilities, including attending college full time, taking care of her young daughter, and taking care of 2 foster children" as well as abnormal lab results she had just received); AR 548 (treatment note dated May 8, 2015, noting mostly normal examination results except for constricted and tearful affect and depressed mood and noting "I reiterated that I think being a full-time foster parent is bad for her health . . ."); AR 553 (treatment note dated June 15, 2015, noting mostly normal examination results except constricted but not tearful affect and "sort of down" mood, but noting that claimant had experienced improvement on new medication and that a higher dose was probably needed to attain mood stability and keep psychosis away); AR 555 (treatment note dated July 2, 2015, noting normal

examination results except for constricted affect and that claimant was "definitely doing better following vacation and reduced stress at home"); AR 746 (treatment note dated July 27, 2015, indicating normal examination results except for fair hygiene, tearful affect, depressed mood and fair eye contact and noting in assessment that Gilbert was stressed about disability application and that while Dr. Rathe supported her intent to apply for disability "she also does best when her schedule has structure and routine, so I think a part-time job would help her feel more worthy, more productive, and more organized" and noting it would need to be a low stress job); AR 742 (treatment note dated August 11, 2015, indicating similar examination results and noting that while Dr. Rathe was concerned about whether Gilbert's academic schedule this fall would overwhelm her, she also found that the structure of school helps her); AR 739 (treatment note dated September 11, 2015, noting normal examination results except for fair hygiene, sad affect, depressed mood and fair eye contact, and "[g]iven that she is struggling academically and has been severely depressed, anxious, and cognitively impaired, plus has a history of psychosis and mania, I do not think she is able to work competitively and will support her attempt to get on disability."); AR 729 (treatment note dated November 12, 2015, with normal examination results except for fair hygiene and noting that Gilbert had seen improvement in mood and anxiety); AR 726 (treatment note dated December 4, 2015, with normal examination results and noting in assessment that she was functioning relatively well at school and would do best working part-time so as not to get overwhelmed); AR 722 (treatment note dated December 23, 2015, with mostly normal examination results except judgment and insight were fair, but noting in assessment that Gilbert was taken to the ER for suicidal ideation and noting "I think she is thinking catastrophically about her academic schedule next semester and this is triggering suicidality); AR 718-19 (treatment note dated December 29, 2015, noting normal examination findings and that Gilbert was thinking more realistically and goal-oriented and that she should expect gradual improvement from higher dose of anti-depressant over the next few weeks); AR 713-16 (treatment note dated January 19, 2016, noting Gilbert was doing very poorly, was not

taking her medication as prescribed and was considering adopting two children whom she previously fostered, which Dr. Rathe strongly advised against noting it would likely cause her to decompensate); AR 707 (treatment note dated February 2, 2016, noting that Gilbert continued to do poorly and that "stress related to school and her home responsibilities have directly caused exacerbations in her anxiety and mood disorders"); AR 700 (treatment noted dated March 23, 2016, noting that Gilbert's mood had still not stabilized and that Dr. Rathe would make adjustments to medications to address this); AR 696 (treatment note dated April 27, 2016, noting that Gilbert continued to struggle and that it was "typical for her at the end of each school semester to decompensate, due to anticipatory anxiety regarding the impending lack of structure that school break bring" and that it would be "excellent for her to have volunteering or a part-time job to add structure to her days."); AR 688 (treatment note dated June 1, 2016, noting that Gilbert was tolerating new lithium medication and that they had discussed need to structure Gilbert's daily routine with part-time work or volunteering); AR 682 (treatment note dated July 18, 2016, noting that Gilbert was doing better following the addition of lithium); AR 676 (treatment note dated September 20, 2016, noting that Gilbert was "really doing significantly better on her current combination of medications"); AR 669 (treatment note dated November 7, 2016, noting that Gilbert had become depressed, which Dr. Rathe found secondary to clinical depression as well as to marital unhappiness and loneliness and that Gilbert wanted to come off her medications and was going to taper off them against medical advice); AR 658 (treatment note dated May 1, 2017, noting that Gilbert was psychiatrically stable despite being off one of her medications, but noting concern of risks of decompensation based on Gilbert's plans to get pregnant and open her own daycare).

While there are treatment notes that support Dr. Rathe's opinion, the majority of notes suggest that Gilbert was doing well when she was taking her medications as prescribed and not dealing with situational stressors. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Wildman*, 596 F.3d at

965. While I am required to consider evidence that detracts from the ALJ's decision as well as evidence that supports it, I am not permitted to reverse "merely because substantial evidence also exists that would support a contrary outcome." *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). Keeping in mind that substantial evidence is defined as "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion" *see Kluesner*, 607 F.3d at 536, I find this reason is supported by substantial evidence.

The ALJ also reasoned that Dr. Rathe's opinion was not consistent with the claimant's wide range of daily activities or neurocognitive testing. AR 20. A neuropsychological evaluation was performed on February 13, 2015. AR 600-06. Most relevant to Gilbert's disability application is the finding that she has "[g]enerally poor delayed recall of newly learned verbal information" but not for nonverbal information. AR 604, 606. The evaluator also noted that "[p]oor recent memory for newly learned verbal material did not appear to be reasonable attributable to problems with basic attention and concentration." AR 604. The ALJ explained that during the period of alleged disability Gilbert was a full-time student at a community college; successfully obtained her degree; cared for her own child and two foster children; attended a week-long family reunion; performed household tasks with help such as shopping, meal preparation, managing finances, being socially active with other young parents and enjoying play dates with their children; and worked part-time. AR 17. This also constitutes a good reason supported by substantial evidence.

Another inconsistency addressed by the ALJ was an internal inconsistency in Dr. Rathe's opinion related to Gilbert's social functioning. AR 20. This reason is also supported by the evidence. *See* AR 911-12 (in which Dr. Rathe checked "mild" in several areas of social functioning, (except for ability to "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness" in which she checked moderate to extreme and wrote "depending on depression") and checked "marked" in the broader category of "difficulties in maintaining social functioning"). *See Guilliams*

*v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("Physician opinions that are internally inconsistent, however, are entitled to less deference than they would receive in the absence of inconsistencies.").

Finally, the ALJ found that Dr. Rathe's opinion that Gilbert could be expected to be absent from work three or more times a month was inconsistent with her treatment notes, which did not reflect missed appointments at a rate proportionate to three times per month. While I agree that the treatment notes demonstrate that Gilbert did not miss her monthly appointments, it is a stretch to compare attendance requirements for monthly appointments to full-time competitive work. Nonetheless, I agree with Judge Mahoney's analysis that such a limitation is inconsistent with the record as a whole. In addition to the reasons discussed by Judge Mahoney, I note that Gilbert was not given attendance flexibility as an accommodation for her college coursework, which was noted by the ALJ earlier in his decision. *See* AR 17 (citing AR 705). Even if I concluded this was not a "good reason" for the ALJ to discount her opinion, Gilbert ignores the seven other reasons cited by the ALJ. Several of these reasons, as discussed herein, constitute good reasons for not giving Dr. Rathe's opinion controlling weight. Because the record as a whole is inconsistent with the extreme limitations identified by Dr. Rathe, I find the consistency factor weighs in favor of the ALJ's decision to assign less than controlling weight to Dr. Rathe's opinion.

The next factor to consider is specialization. Dr. Rathe is a psychiatrist, meaning her medical opinion is generally entitled to more weight given that it is related to an area of her specialty. This factor weighs against the ALJ's decision to give Dr. Rathe's opinion less than controlling weight.

Overall, I find that the ALJ's decision to give Dr. Rathe's opinion less than controlling weight is supported by substantial evidence in the record based on the lack of supportability of her opinions and the inconsistencies pointed out by the ALJ within Dr. Rathe's own opinion and compared to her treatment notes and the record as a whole. While other factors support giving Dr. Rathe's opinion greater weight (the length and

frequency of treatment, nature and extent of treatment and specialization), the importance of these factors is somewhat diminished given the exacerbating circumstances Gilbert was facing while she saw Dr. Rathe and the fact that Dr. Rathe did not have access to Gilbert's previous mental health records. This objection is overruled.

**B.**    *Burrow's Opinion*

Gilbert agrees with Judge Mahoney that the ALJ should have addressed Burrow's opinion. She disagrees that the ALJ's failure to do so can be considered harmless given that the opinion was similar to Dr. Rathe's and the ALJ provided good reasons supported by substantial evidence for rejecting that opinion. Gilbert contends that because Burrow's opinion supported Dr. Rathe's opinion, it is more likely that they are both correct as to Gilbert's limitations. *Id.* at 2. She notes that Burrow's opinion was provided in narrative form and clearly explains the bases for her conclusions. She also points out that Burrow provided her opinion at the request of the Social Security Administration as opposed to Gilbert's own request. She contends the agency should have obtained Burrow's treatment notes upon receipt of her opinion and the ALJ should have also ensured the notes were in the administrative record upon reviewing Burrow's opinion. *Id.* at 3. She contends Burrow's opinion supports a reasoning level one limitation and the ALJ's failure to address her opinion was not harmless error.

As Judge Mahoney explained, Burrow is not an "acceptable medical source," 20 C.F.R. § 404.1513(a), but an "other medical source," *id.* § 404.1513(d), whose opinion the ALJ is to consider when assessing the severity of an impairment and how it affects the ability to work. Social Security Ruling ("SSR") 06-03p includes the following statements regarding opinions from other medical sources:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. *See* 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources"

can give us medical opinions. *See* 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. *See* 20 CFR 404.1527(d) and 416.927(d).

* * *

In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:

- Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists;

* * *

Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity.

* * *

Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from "acceptable medical sources," including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions.

Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an

"acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000, "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

See SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Among other things, this ruling means a therapist's opinion (a) is not entitled to controlling weight and (b) cannot establish the existence of a medically-determinable impairment. However, a therapist's opinion can be used as evidence of the severity of an impairment and how the impairment affects the individual's ability to function. The ALJ is instructed to evaluate a therapist's opinion with reference to the same factors that apply to other medical sources, including:

- How long the source has known and how frequently the source has seen the individual;

- How consistent the opinion is with other evidence;

- The degree to which the source presents relevant evidence to support an opinion;

- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and

- Any other factors that tend to support or refute the opinion.

*See* 20 C.F.R. § 404.1527(c). "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005). The ALJ was required only to explain the reasons for the weight he gave Burrow's opinion if he found it was entitled to greater weight than a medical opinion from a treating source. *See* 20 C.F.R. § 404.1527(f)(2) ("when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision . . . ."). Otherwise, "[t]he adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.*

Burrow provided a two and a half page single-spaced narrative opinion at the request of a Social Security examiner specialist. *See* AR 437-42. She addressed five areas of concern as requested: remembering and understanding instructions, procedures and locations; carrying out instructions, maintaining attention, concentration and pace; interacting appropriately with supervisors, co-workers and the public; using good judgment and responding appropriately to changes in the workplace; and the ability to handle benefits on her own behalf. *Id.* Similar to Dr. Rathe, Burrow described "significant" struggles in all of these areas except her ability to interact appropriately with supervisors, coworkers and the public. *Id.* However, her narrative suggests that the struggles Burrow identifies have been addressed by appropriate limitations in the ALJ's RFC. For instance, with regard to remembering and comprehending information, Burrow notes that her short term memory is impaired and she has to have things written down for her or spoken to her several times in order to comprehend things and that she can have a difficult time staying focused and become easily overwhelmed or over-

stimulated with information, class activities, discussion or the length of a lecture. AR 440. The ALJ included limitations in the RFC of low stress work with simple, routine tasks, with simple work-related decisions and few if any changes in work setting and no production rate pace work. AR 15. These same limitations address Burrow's concerns with Gilbert's ability to maintain attention and focus and use good judgment and respond appropriately to changes in the workplace.

While the ALJ did not discuss Burrow's opinion, the state agency consultants did. The initial disability determination states:

> A letter is on file from the claimant's therapist at a community college dated 3/19/2015. She indicates that she is [sic] been meeting with the claimant on a weekly basis since April 2014. The therapist reported significant impairments in short-term memory and cognitive abilities due to brain injury and limitations across all areas of work-related functioning due to brain injury, memory difficulties, and the claimant's emotional conditions. The therapist opinion is not consistent with other information in the record, she is a non-AMS provider, and therefore the opinion is given no weight.

AR 96. On reconsideration, the state agency consultant noted there was no change in her condition and concurred with the initial determination. AR 111-12. Given that the ALJ gave the state agency consultant opinions "partial weight, such significant weight as supports the residual functional capacity found for the claimant by the undersigned" I find that the weight attributed to Burrow's opinion can be gleaned from the record and the ALJ's failure to explicitly discuss it amounts to either a deficiency in opinion-writing technique or harmless error, neither of which require remand. *See Strongson*, 361 F.3d at 1072 ("We will not set aside an administrative finding based on an arguable deficiency in opinion-writing technique when it is unlikely it affected the outcome."); *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently ... and any error by the ALJ was therefore harmless."). This objection is overruled.

## C.    *Reasoning Level Limitation*

Gilbert takes issue with Judge Mahoney's finding that because the ALJ relied on testimony from the vocational expert (VE) that identified jobs at reasoning level two, the ALJ did not intend to limit Gilbert to one- to two-step tasks.  *Id.* at 3 (citing Doc. No. 14 at 25).  Gilbert argues that the ALJ's reliance on the VE's identification of reasoning level two jobs was due to the ALJ's mistaken assumption that his hypothetical accounted for one- or two-step task limitation and that the ALJ generally did not understand the importance of precision with regard to reasoning level limitations.  *Id.* at 3-4.  Gilbert notes that the Eighth Circuit has rejected the argument that a one- to two-step reasoning level limitation is consistent with reasoning level two and three work per the DOT.  *Id.* at 4 (citing *Stanton v. Comm'r of Soc. Sec.*, 899 F.3d 555, 559 (8th Cir. 2018) and *Thomas v. Berryhill*, 881 F.3d 672, 678 (8th Cir. 2018)).  She contends that in light of these cases, it is insufficient for the ALJ to rely on unskilled work to deny a claimant benefits with a one- to two-step reasoning level limitation.  *Id.*  She argues that in the event a claimant has a one- to two-step reasoning level limitation (which Gilbert contends she does), the ALJ must precisely identify that limitation in the RFC and hypothetical question to the VE.

Gilbert notes that in her case, the ALJ's explanation for the RFC determination indicates that the ALJ intended for his RFC to limit Gilbert to one- to two-step tasks.  *Id.* She disagrees with Judge Mahoney that the ALJ relied on the opinions of Drs. Roland and Roberts to preclude a one- to two-step limitation.  She contends the ALJ assumed the one- to two-step task limitation was accounted for in his RFC reasoning level limitation. *Id.* at 5.  Gilbert argues the case should be remanded because the VE testimony does not explain the apparent conflict between the ALJ's RFC and the reasoning level two jobs the ALJ relied on to deny benefits at Step Five and there is no evidence in the record that reasoning level one jobs exist in significant numbers in the national economy that Gilbert can perform.

The Eighth Circuit recently addressed the reasoning level limitation issue and the need to resolve any apparent conflicts between the RFC and DOT in *Thomas v. Berryhill*, 881 F.3d 672, 676-79 (8th Cir. 2018). In *Thomas*, the ALJ determined the claimant could perform unskilled sedentary work limited to the complexity of rote "1 to 2 step tasks" involving "few variables and little judgment." *Thomas*, 881 F.3d at 676. The VE identified two jobs the claimant could perform and the ALJ relied on those jobs to make the Step Five determination that there was other work available in the national economy that the claimant could perform. The Commissioner conceded that one of the jobs was not suitable work. As to the other job, the DOT entry indicated it involved level-three reasoning requiring the ability to apply "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." *Id.* at 677 (quoting *Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010)). Level-one reasoning requires "commonsense understanding to carry out simple one-or two-step instructions." *Id.* (citing *Moore*, 623 F.3d at 604). The court concluded this apparent conflict required the ALJ to "elicit from the expert an opinion on whether there is a 'reasonable explanation' for the conflict and determine whether the expert's testimony warranted reliance despite the conflicting information in the DOT." *Id.* at 678. The Eighth Circuit vacated the district court's judgment and remanded with instructions to return the case to the Social Security Administration for a new step-five determination. *Id.* at 679.

All of Gilbert's arguments hang on the idea that the ALJ intended a one- to two-step limitation in the RFC or "assumed" that the RFC included such a limitation. This would mean Gilbert is limited to reasoning level one jobs as opposed to reasoning level two jobs, which the ALJ relied on in making his Step Five determination. Reasoning level two jobs require an individual to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT, App. C. The ALJ's RFC included a limitation of "low stress work." AR 15. The ALJ went on to define such work as involving simple, routine tasks, with simple work[-]related decisions and

few if any changes in work setting." *Id.* He did not include anything about the number of steps Gilbert could be expected to follow. Gilbert relies on the opinions of the state agency consultants to support her one- to two-step limitations because they opined she retained the RFC "to perform simple, repetitive tasks consisting of 1 to 2 step commands." AR 97, 111-12. However, the ALJ assigned these opinions only "partial weight" noting they were "fairly well supported and consistent with other evidence," but that the ALJ "also considered evidence not available to the state agency medical consultants." *Id.* at 19-20.

Judge Mahoney relied on the VE's testimony and *Moore v. Astrue*, 623 F.3d 599, 604-05 (8th Cir. 2010), in concluding that the ALJ did not intend to limit Gilbert to reasoning level one positions. Gilbert's attorney asked the VE if the person identified in the ALJ's hypothetical matching the RFC were limited to two- and three-step work, whether that would preclude competitive employment. The VE responded:

> I'm not familiar with the regs. I believe the regs define it as one and two-step as an elimination of employment. I don't know how the DOT --- how they initially assess how to define two and three – two- and three-step components. The one- and two-steps are level ones, and so employment positions would be level two, so I identified level two positions.

AR 82. The attorney asked how many steps were involved in level two positions and the VE responded: "Well, they would be at least up to three – I mean, level ones are one and two, so level two would then take it to the three and four." *Id.* at 83. He went on to explain:

> And that again, I'm not clear on steps. Definition of steps has never been clarified through the DOT on assessments, whether one step is a continuous process from the time you brush your teeth to walking into the room or if it's actually the independent process of grabbing a toothbrush, then putting the toothpaste on the toothbrush, then bringing the toothbrush up to your mouth.
>
> There are sequencing components that I'm not sure –and I'm not aware of how they initially assess that based on that. That is a behavioral component

and that may have been the process, I don't know.  But I don't know how
to answer that, counsel.

*Id.*  The VE went on to explain that he did not know how to define three-step work,
identifying getting to work as a step, getting to the job site as a step and then performing
the job and the components within it as a step.  He indicated this is how he would define
it personally and noted the DOT does not define it.  *Id.* at 84.  The ALJ did not ask any
follow up questions.

Judge Mahoney noted that in *Moore*, the Eighth Circuit held there was no
inconsistency between the claimant's ability "to handle simple job instructions; . . . to
adapt to infrequent work changes; and  . . . [to] perform[] basic mental demands of
simple, routine, and repetitive work activity at the unskilled task level"; and the
claimant's ability to perform jobs identified by the DOT as requiring a reasoning level of
two.  Doc. No. 14 at 25 (citing *Moore*, 623 F.3d at 604).  The court reasoned "the ALJ
did not limit 'simple' job instructions to 'simple one- or two-step instruction' or otherwise
indicate that [claimant] could perform only occupations at a DOT Level 1 reasoning
level."  *Id.*  She concluded that same reasoning applies here.

Further, Judge Mahoney described why the record supported a finding that the
ALJ did not intend to include a one- to two-step limitation in limiting Gilbert to "simple,
routine tasks, with simple work[-]related decisions and few if any changes in work
setting."  She noted that Dr. Roland performed a one-time consultative examination June
2015, in which he noted:

> Memory was intact for recent and remote events.  Immediate retention and
> recall was reasonably intact as measured by [Gilbert's] ability to remember
> 2 out of 3 unrelated words following a five minute delay.  This indicates
> the ability to remember 2 and perhaps 3 step instructions given by
> supervisory personnel.

*Id.* at 26 (quoting AR 520).  The ALJ gave partial weight to Dr. Roland's opinion, stating
that his findings were consistent with some other evidence, but the record as a whole
supported a somewhat more restrictive RFC.  Judge Mahoney agreed with the

Commissioner that this was referring to Dr. Roland's finding that Gilbert was able to relate effectively to employers, supervisors and residents/customers as the ALJ's RFC included only occasional contact with supervisors and coworkers and no contact with the public. *Id.* (citing AR 15, 522). Judge Mahoney also reasoned that Dr. Roberts' one-time neuropsychological examination supported a reasoning level greater than one. He found Gilbert's "[p]oor recent memory for newly learned verbal material did not appear to be reasonably attributable to problems with basic attention and concentration." AR 431. He also found she was "likely to do better in employment and learning environments that are highly structured in nature." AR 432. The ALJ gave this conclusion "great weight" finding it was supported and consistent with the evidence as a whole and provided the best description of Gilbert's ability to function. AR 18.

Judge Mahoney agreed that these opinions, combined with the ALJ's independent review of the medical evidence, supported the ALJ's decision not to limit Gilbert to work involving one- or two-step tasks. She also noted that Gilbert's activities of daily living (including completing her degree with accommodations and working as a kitchen helper, which has a DOT reasoning level of two)[5] provided further support for the ALJ's RFC determination that Gilbert is not limited to work involving only one to two steps. Doc. No. 14 at 28.

I agree with Judge Mahoney that the ALJ did not intend to limit Gilbert to work requiring only one to two steps. The ALJ could have easily adopted those findings by the nonexamining state agency consultants, but instead gave their opinions "partial weight" and did not include such a limitation in the RFC. The opinions and findings by Drs. Roland and Roberts support the ALJ's RFC and do not require a limitation of work involving only one- to two-step tasks. Gilbert's activities and past work also indicate the ability to perform at a higher reasoning level. While these activities and past work

---

[5] Judge Mahoney noted that while the ALJ ultimately concluded that Gilbert could not work as a kitchen helper, this was likely due to limitations in social interaction. Doc. No. 14 at 28, n.6.

resulted in an exacerbation of her symptoms, the ALJ's RFC includes significant limitations in other areas that these previous activities did not. Finally, the ALJ was made aware of this issue during Gilbert's attorney's questioning of the VE. Given that the ALJ did not ask any follow-up questions or change the RFC or hypothetical posed to the VE, it appears the ALJ was comfortable with the RFC being associated with reasoning level two jobs and he did not intend to include a more limited RFC with the ability to perform only one- to two-step tasks.

As the VE noted, reasoning level two jobs do not necessarily correspond to a certain number of steps as reasoning level one jobs do. Moreover, the limitations described in the ALJ's RFC have been found to be consistent with reasoning level two jobs in other cases. *See Moore*, 623 F.3d at 604 ("There is no direct conflict between 'carrying out simple job instructions' for 'simple, routine and repetitive work activity,' as in the hypothetical, and the vocational expert's identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate."); *Abrew v. Astrue*, 303 F. App'x 567, 569 (9th Cir. 2008) ("there was no conflict between the ALJ's step five determination that Abrew could complete only simple tasks and the vocational expert's testimony that Abrew could do jobs that the U.S. Department of Labor categorizes at "Reasoning Level 2."); *Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. 2008) ("Reasoning Level 1 jobs are elementary, exemplified by such tasks as counting cows coming off a truck, and someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication – in other words, Reasoning Level 2 jobs."); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (noting level-two reasoning appeared more consistent with plaintiff's RFC described as "retains the attention, concentration, persistence and pace levels required for simple and routine work tasks."); *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive."); *Murphy v. Berryhill*, NO. 18-CV-61-LRR, 2019 WL 2372896, at *6 (N.D. Iowa Apr. 10, 2019) (holding that RFC determination limiting claimant to "simple,

routine, and repetitive tasks" was "consistent with jobs requiring level 2 and level 3 reasoning") (citing *Moore*, 768 F.3d at 990), *appeal filed*, No. 19-2202 (8th Cir. June 12, 2019)). I find the ALJ's Step Five determination is supported by substantial evidence. This objection is overruled.

### D. Appointments Clause Challenge

Finally, Gilbert argues the ALJ's decision should be vacated and this case remanded because the ALJ was an inferior officer who was not appointed in compliance with the Appointments Clause.[6] Doc. No. 15 at 6-13. Gilbert acknowledges I have previously addressed this issue in other cases and notes that the issue is pending with the Eighth Circuit in consolidated cases. *Id.* at 6, n.2. I have previously held that Social Security "claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings." *Stearns v. Berryhill*, No. 17-2031, 2018 WL 4380984, at *5-6 (N.D. Iowa Sept. 14, 2018). *See also Thomas v. Saul*, No. C18-2038-LTS, 2019 WL 4246691, at *9 (N.D. Iowa Sept. 6, 2019); *White v. Comm'r of Soc. Sec.*, No. C18-2005-LTS, 2019 WL 1239852, at *4 (N.D. Iowa Mar. 19, 2019). I have previously encountered many of the arguments Gilbert makes in her objection and have not found them persuasive. *See Thomas*, 2019 WL 4246691, at *9. Gilbert requests that in the event I find against her on this issue that I stay entering judgment in her case until the Eighth Circuit addresses the issue. *Id.* at 6, n. 3 (citing cases that have been stayed pending the circuit's resolution of this issue).

Gilbert's challenge is based on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). In that case, the Court held that ALJs for the Securities and Exchange Commission (SEC) are "inferior officers" subject to the Appointments Clause as they "exercise[] significant authority pursuant to the law of the United States." *Lucia*, 138 S. Ct. at 2051. The

---

[6] Providing that principal officers must be appointed by the President with the advice and consent of the Senate and that inferior officers be appointed by "the President alone, . . the Courts of Law, or . . . the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

Court found that Lucia was entitled to a new administrative hearing in front of a properly-appointed ALJ noting that he had raised a "timely challenge" before the administrative agency. *Id.* at 2055. While Lucia did not raise his Appointment Clause challenge to the ALJ, he did raise it in his appeal to the SEC. *Id.* at 2050.

Gilbert did not raise this argument in front of the ALJ, nor the Appeals Council, but argues that it is timely because there is no issue exhaustion requirement for nonadversarial disability hearings and even if there was, the constitutional claims exception and the futility exception apply. *Id.* at 4. In the alternative, Gilbert argues that I should exercise discretionary review authority pursuant to *Freytag v. Comm'r*, 501 U.S. 868, 878-79 (1991). *Id.*

I decline to vacate the ALJ's decision on this basis and find that because Gilbert did not raise an Appointments Clause issue before or during the ALJ's hearing or before the ALJ's decision became final, she has forfeited the issue for consideration on judicial review. As Judge Mahoney noted, every district court within the Eighth Circuit to consider this issue has reached the same conclusion. *See* Doc. No. 14 at 32-33 (citing cases). This is also consistent with the majority of courts around the country that have addressed the issue. *Id.* at 31 (citing cases). The Eighth Circuit's guidance on this issue will be helpful. However, I decline to stay judgment in this case until that decision is reached. *See Arkansas Peace Center v. Arkansas Dept. of Pollution Control*, 992 F.2d 145, 147 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)) (noting the party seeking the stay must show: (1) they are likely to succeed on the merits, (2) they will suffer irreparable injury unless the stay is granted, (3) no substantial harm will come to other interested parties, and (4) the stay will do no harm to the public interest); *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 816 (8th Cir. 2006) (noting that court has broad discretion in deciding whether to stay proceedings). This objection is overruled.

# V. CONCLUSION

For the reasons set forth herein:

1.     Gilbert's objections (Doc. No. 15) to the Report and Recommendation (Doc. No. 14) are **overruled**.

2.     I **accept** Judge Mahoney's Report and Recommendation (Doc. No. 14) without modification.  *See* 28 U.S.C. § 636(b)(1).

3.     Pursuant to Judge Mahoney's recommendation:

    a.     The Commissioner's disability determination is **affirmed**; and

    b.     Judgment shall enter against Gilbert and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 30th day of September, 2019.

_____
Leonard T. Strand, Chief Judge